IN THE UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

PORTLAND DIVISION

| | |
|---|---|
| **G.R.**, by his next friends, guardians and Parents **WILLIAM RUSSELL**, individually, and **KAREN RUSSELL**, individually, | Civil Case No. 10-232-KI |
| Plaintiffs, | OPINION AND ORDER |
| vs. | |
| **DALLAS SCHOOL DISTRICT No. 2**, an Oregon school district; **CHRISTY PERRY**, individually and in her official capacity as Superintendent of Dallas School District; **SUSAN GARTLAND**, individually and in her official capacity as Director of Special Education of Dallas School District; and **MICHAEL BECK**, individually and in his official capacity as Assistant Principal of Dallas High School; **BRIAN GREEN**, individually and in his official capacity as Assistant Principal of Dallas High School; **POLK COUNTY**, an Oregon county, | |
| Defendants. | |

Page 1 - OPINION AND ORDER

Kevin C. Brague
The Brague Law Firm
12972 SW Tearose Way
Tigard, Oregon  97223

   Attorney for Plaintiffs

J. Channing Bennett
Luke W. Reese
Garrett Hemann Robertson P.C.
1011 Commercial Street N.E.
P. O. Box 749
Salem, Oregon  97308-0749

   Attorneys for Defendants

KING, Judge:

Plaintiffs, G.R. and his parents, allege several claims related to their contention that defendant Dallas School District No. 2 ("the District") did not provide a free and appropriate public education to G.R., as required by the Individuals with Disabilities Education Act ("IDEA"), 20 U.S.C. § 1400 et seq.  After battling with defendants for two years over G.R.'s education, his parents enrolled G.R. in a private residential school in Utah.  Plaintiffs also bring claims based on the disclosure of confidential privileged juvenile records, allegedly in violation of ORS 419A.255.

Before the court is Defendants' Partial Motion to Dismiss (#23), which was filed by all defendants other than Polk County.  For the reasons below, I dismiss the following claims in the First Amended Complaint:  (1) the Seventh Claim against defendants Perry, Gartland, Beck, and Green in their individual capacities under Section 504 of the Rehabilitation Act ("Rehab Act"); (2) the Eighth Claim against defendants Perry, Gartland, Beck, and Green in their individual

Page 2 - OPINION AND ORDER

capacities under the Americans with Disabilities Act ("ADA"); (3) the Second Claim for a

declaratory judgment; and (4) the Ninth and Tenth due process claims. Further, I substitute the

District for defendants Perry, Gartland, Beck, and Green in the following claims: (1) the Third

Claim–Negligence and Negligence Per Se; (2) the Fourth Claim–Intentional Infliction of

Emotional Distress; (3) the Fifth Claim–Deceit; and (4) the Sixth Claim–Violation of ORS

659.850 for discrimination in education.

## LEGAL STANDARDS

A motion to dismiss under Rule 12(b)(6) will be granted if plaintiff fails to allege the

"grounds" of his "entitlement to relief." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555, 127

S. Ct. 1955, 1964-65 (2007) (quotation omitted). The Court elaborated on Twombly in Ashcroft

v. Iqbal, __ U.S. __, 129 S. Ct. 1937 (2009):

> To survive a motion to dismiss, a complaint must contain sufficient factual
> matter, accepted as true, to "state a claim to relief that is plausible on its face."
> Id., at 570, 127 S. Ct. 1955. A claim has facial plausibility when the plaintiff
> pleads factual content that allows the court to draw the reasonable inference that
> the defendant is liable for the misconduct alleged. Id., at 556, 127 S. Ct. 1955.
> The plausibility standard is not akin to a "probability requirement," but it asks for
> more than a sheer possibility that a defendant has acted unlawfully. Ibid. Where a
> complaint pleads facts that are "merely consistent with" a defendant's liability, it
> "stops short of the line between possibility and plausibility of 'entitlement to
> relief.'" Id., at 557, 127 S. Ct. 1955 (brackets omitted).

Id. at 1949 (quoting Twombly). The court should not accept as true allegations which are legal

conclusions. Id. at 1949-50.

Normally, the review is limited to the complaint and allegations of material fact are

viewed in the light most favorable to the non-moving party. Diaz v. Int'l Longshore and

Warehouse Union, Local 13, 474 F.3d 1202, 1205 (9th Cir. 2007). The court may also review a

document extrinsic to the complaint if the authenticity of the document is not contested and the

document is integral to the claims.  Fields v. Legacy Health System, 413 F.3d 943, 958 n.13 (9th

Cir. 2005).

**DISCUSSION**

I.      Agreed Dismissals

Plaintiffs agree that I should dismiss the following claims, which are foreclosed by law:

(1) against defendants Perry, Gartland, Beck, and Green in their individual capacities under

Section 504 of the Rehabilitation Act (Seventh Claim); (2) against defendants Perry, Gartland,

Beck, and Green in their individual capacities under the Americans with Disabilities Act (Eighth

Claim); and (3) against defendants Perry, Gartland, Beck, and Green in the Second Claim seeking

a declaratory judgment.  Although Perry, Gartland, Beck, and Green will remain as defendants in

their official capacities in the Rehab Act and ADA claims, "an official-capacity suit is, in all

respects other than name, to be treated as a suit against the entity."  Kentucky v. Graham, 473 U.S.

159, 166, 105 S. Ct. 3099 (1985).  The four individual defendants are all employees of the

District.

II.     Due Process Claims

Plaintiffs allege that defendants Beck, Green, and Gartland initiated and maintained

regular communication in 2008 with a Polk County Juvenile Department Probation Officer and

obtained from him confidential privileged juvenile records, reports, and other materials

concerning G.R. in violation of ORS 419A.255.  In the Ninth Claim, plaintiffs allege they have a

constitutional liberty interest in the privacy of G.R.'s identity, medical, psychiatric, educational,

and juvenile records, and defendants violated that interest by disclosing the private records

Page 4 - OPINION AND ORDER

without due process and by using the records to deny G.R. an education.  In the Tenth Claim,

plaintiffs allege their fundamental constitutional parent-child privacy right defendants violated by

disclosing these same records without a compelling state interest and by using the records against

G.R.

Defendants ask me to dismiss both claims because plaintiffs merely allege a violation of

ORS 419A.255, which defendants argue is not an interest protected by the federal constitution.

Defendants argue that the liberty interest to direct the education of children is generally limited to

challenges of state laws regulating curriculum or mandatory school attendance.  According to

defendants, plaintiffs never lost the ability to control G.R.'s education, in spite of the disclosure of

juvenile records, as evidenced by the parents' decision to enroll him in a residential school in

Utah.

Plaintiffs contend that the liberty interest at issue is controlling the privacy of a child's

medical, psychiatric, educational, and juvenile records, as well as controlling the child's

education.  To support their due process claim based on a privacy interest, plaintiffs cite case law

discussing privacy interests in non-disclosure of personal matters and in maintaining

independence in making certain decisions.  Plaintiffs argue that they sufficiently allege a violation

of their privacy interest by the District's disclosure and use of privileged records.

Plaintiffs cite no case that directly supports their argument that two distinct constitutional

rights were implicated by defendants' alleged violation of ORS 419A.255 in disclosing and using

G.R.'s privileged juvenile records.  Fields v. Palmdale Sch. Dist., 427 F.3d 1197 (9th Cir. 2005),

reaff'd with amendments on denial of reh'g, 447 F.3d 1187, cert. denied, 549 U.S. 1089 (2006),

contains an instructive analysis in concluding that parents have no fundamental due process right

to be their children's exclusive providers of information regarding sexual matters and, similarly,

have no due process or privacy right to override the public school's decisions about exposing

students to various types of information.  Id. at 1200.  The court noted,

> The Supreme Court has held that the right of parents to make decisions concerning
> the care, custody, and control of their children is a fundamental liberty interest
> protected by the Due Process Clause.  See Troxel v. Granville, 530 U.S. 57, 66,
> 120 S. Ct. 2054, 147 L. Ed. 2d 49 (2000) (plurality opinion) ("[I]t cannot now be
> doubted that the Due Process Clause of the Fourteenth Amendment protects the
> fundamental right of parents to make decisions concerning the care, custody, and
> control of their children.").  This right is commonly referred to as the Meyer-Pierce
> right because it finds its origin in two Supreme Court cases, Meyer v. Nebraska,
> 262 U.S. 390, 43 S. Ct. 625, 67 L. Ed. 1042 (1923), and Pierce v. Society of
> Sisters, 268 U.S. 510, 45 S. Ct. 571, 69 L. Ed. 1070 (1925).

Id. at 1204.

> Likewise, lower courts have recognized the constitutionality of a wide
> variety of state actions that intrude upon the liberty interest of parents in
> controlling the upbringing and education of their children.  See Littlefield v.
> Forney Indep. Sch. Dist., 268 F.3d 275 (5th Cir. 2001) (upholding school district's
> mandatory school uniform policy); Hooks, 228 F.3d at 1036 (upholding state
> statute denying speech therapy services to home-schooled children); Hutchins v.
> District of Columbia, 188 F.3d 531 (D.C. Cir. 1999) (plurality opinion) (upholding
> a municipality's curfew ordinance that was only applicable to minors); Swanson v.
> Guthrie Indep. Sch. Dist. No. 1-L, 135 F.3d 694 (10th Cir. 1998) (upholding school
> district's full-time attendance policy); Herndon v. Chapel Hill-Carrboro City Bd. of
> Educ., 89 F.3d 174 (4th Cir. 1996) (upholding school district's mandatory
> community service program).

> Finally, there are a number of cases that have upheld the constitutionality of
> school programs that educate children in sexuality and health.  See, e.g., Leebaert
> v. Harrington, 332 F.3d 134 (2d Cir. 2003) (upholding school district's mandatory
> health classes against a father's claim of a violation of his fundamental rights);
> Parents United for Better Sch., Inc. v. School Dist. of Philadelphia Bd. of Educ.,
> 148 F.3d 260 (3d Cir. 1998) (upholding school district's consensual condom
> distribution program); Brown v. Hot, Sexy & Safer Prods., Inc., 68 F.3d 525 (1st
> Cir. 1995) (upholding compulsory high school sex education assembly program);
> Citizens for Parental Rights v. San Mateo County Bd. of Educ., 51 Cal. App. 3d 1,
> 124 Cal. Rptr. 68 (1975) (upholding school district's non-compulsory health and
> sex education program against parental challenge).

Id. at 1204-05.

         Although the right to privacy provides a different source for the right the
parents seek to assert than does Meyer-Pierce, like Meyer-Pierce it does not
encompass that right.  The Supreme Court has identified at least two
constitutionally protected privacy interests: the right to control the disclosure of
sensitive information and the right to "independence when making certain kinds of
important decisions."  Whalen v. Roe, 429 U.S. 589, 599-600, 97 S. Ct. 869, 51 L.
Ed. 2d 64 (1977).

Id. at 1207.

         In its earliest formulation, the right to privacy was used essentially to
protect the family structure.  See Pierce, 268 U.S. at 510, 45 S. Ct. 571 (affirming
family's right to be free from all but the most necessary state interference); Meyer,
262 U.S. at 390, 43 S. Ct. 625 (same). Courts have since found, however, that the
right to privacy also protects important parental decisions such as whether to bear
children, who has control over children, and other decisions related to procreative
autonomy.  See Carey v. Population Servs. Int'l, 431 U.S. 678, 684-86, 97 S. Ct.
2010, 52 L. Ed. 2d 675 (1977) (holding state's restrictions on sale of contraceptives
an unconstitutional intrusion on the right to decide privately whether to have
children); Roe v. Wade, 410 U.S. 113, 93 S. Ct. 705, 35 L. Ed. 2d 147 (1973)
(holding that the right to abortion falls within the right to privacy); Stanley v.
Illinois, 405 U.S. 645, 651, 92 S. Ct. 1208, 31 L. Ed. 2d 551 (1972) (affirming the
equal rights of unmarried fathers to the custody of their children); Eisenstadt v.
Baird, 405 U.S. 438, 453-54, 92 S. Ct. 1029, 31 L. Ed. 2d 349 (1972) (discussing
privacy right to beget children).  It also encompasses a right of sexual intimacy.
See Lawrence v. Texas, 539 U.S. 558, 123 S. Ct. 2472, 156 L. Ed. 2d 508 (2003).

Id. at 1208.

        The liberty and privacy interests discussed in Field are of a different nature than the

interests raised by plaintiffs.  The District's disclosure and use of G.R.'s juvenile records does not

interfere with G.R.'s parents' ability to raise G.R. as they see fit.

        One of the cases cited by plaintiffs, Whalen v. Roe, 429 U.S. 589, 97 S. Ct. 869 (1977),

actually presents a stronger argument against plaintiffs than for them.  Although Whalen

recognized a constitutionally protected privacy interest, it held that a state law about prescription

medications did not invade any constitutionally protected liberty or privacy interest. Id. at 599-

600, 603-04. The law required pharmacists to provide the state with a copy of every prescription,

including the name and address of the patient, for certain drugs which have both a lawful and

unlawful use. Id. at 593. The concern about release of those medical records is very similar to the

concern about the disclosure and use of G.R.'s juvenile records.

In Boyd v. Lake County, Civ. No. 04-3095-PA, 2007 WL 1598086 (D. Or. June 1, 2007),

the Honorable Owen Panner dismissed plaintiff's due process claims based on an alleged

violation of ORS 419A.255 when a sheriff and district attorney discussed at a town meeting

plaintiff's juvenile arrest for several sex abuse crimes. Judge Panner concluded that plaintiff had

neither a property interest nor a liberty interest implicated by violation of the state law. Id. at

*4-6.

I conclude that the alleged violation of ORS 419A.255 does not invade any

constitutionally protected liberty or privacy due process interest. Consequently, I dismiss the

Ninth and Tenth Claims for due process violations.

III.    Application of the Oregon Tort Claims Act ("OTCA")

Defendants argue that the OTCA requires me to substitute the District as the only

defendant on all common law tort claims and the statutory claim for violation of ORS 659.850,

which prohibits discrimination in education.

Plaintiffs argue that school districts are "bodies corporate," and not "public bodies," so

that the OTCA is inapplicable. Plaintiffs note that in 2009, the Oregon Legislature removed

school districts from the definition of "public body" in the OTCA. Defendants disagree that the

2009 amendments removed school districts from the scope of the Act.

In the analysis of a question on a statute of limitations, the court in <u>S.V. v. Sherwood Sch.</u>

<u>Dist.</u>, 254 F.3d 877, 880 (9th Cir. 2001), stated that the school district was "unquestionably" a

public body under ORS 30.260(4)(b), which stated at the time, in relevant part:  "'Public body'

means . . . [a]ny city, county, school district or other political subdivision or municipal or public

corporation and any instrumentality thereof."  In 2009, however, the legislature revised the

definition of "public body" contained in ORS 30.260 to read, in relevant part:

> (4) "Public body" means:
>
> (a) A public body as defined in ORS 174.109;

ORS 174.109, in turn, states:

> Subject to ORS 174.108, as used in the statutes of this state "public body"
> means state government bodies, local government bodies and special government
> bodies.

The definition of "special government bodies" includes school districts.

ORS 174.117(1)(b).

> Plaintiffs rely on ORS 332.072:

> All school districts are bodies corporate, and the district school board is
> authorized to transact all business coming within the jurisdiction of the district and
> to sue and be sued. Pursuant to law, district school boards have control of the
> district schools and are responsible for educating children residing in the district.

ORS Chapter 332 concerns the local administration of education.  It specifies how school

boards are elected, the powers held by school boards, and issues related to school district property

and personnel.  In contrast, the OTCA refers directly to the definitions in ORS Chapter 174.

Because the characterizations of school districts differ, I will rely on the one referenced in the

Page 9 - OPINION AND ORDER

OTCA because that is the issue before me.  Accordingly, school districts are public bodies under

the OTCA, making the Act applicable.

Defendants also argue that plaintiffs are not seeking any damages which would constitute

an emasculated remedy prohibited by Clark v. OHSU, 343 Or. 581, 605-06, 175 P.3d 418 (2007).

Plaintiffs contend that this issue concerns a factual question of damages, making the argument

more appropriate for a motion for summary judgment.

A determination that the OTCA would provide an emasculated remedy under Clark is the

exception, not the rule.  The OTCA requires the court to substitute the public body for the

individual defendants, on motion of the public body.  ORS 30.265(1).  Thus, I substitute the

District for defendants Perry, Gartland, Beck, and Green in the following claims:  (1) Third

Claim–Negligence and Negligence Per Se; (2) Fourth Claim–Intentional Infliction of Emotional

Distress; (3) Fifth Claim–Deceit; and (4) Sixth Claim–Violation of ORS 659.850 for

discrimination in education.

If plaintiffs find evidence during discovery that the individual defendants were acting

outside the scope of their employment or that the damages make Clark applicable, plaintiff may

move to amend the complaint prior to the dispositive motion deadline.

IV.    Exhaustion of Administrative Remedies

In the Second Claim, plaintiffs allege that on December 4, 2009, ALJ House dismissed

G.R.'s Amended Due Process Hearing Complaint based on a finding of insufficiency for failure to

list G.R.'s present school.  Plaintiffs further allege that the District knew the information and ALJ

House had the information prior to the Final Order.  Plaintiffs seek a declaratory judgment that

they exhausted their administrative remedies for all purposes and may seek compensatory

Page 10 - OPINION AND ORDER

education from August 2006 through August 2009, reimbursement for private residential placement at Provo Canyon School, reimbursement for all educationally-related evaluations, and attorney fees and costs.

Defendants contend that this court does not have jurisdiction to review an ALJ's dismissal of a due process hearing request based on insufficiency. According to defendants, the court's review of plaintiffs' IDEA claim must be limited to an appeal of the June 16, 2010 Final Order. Defendants claim that insufficiency of a complaint is resolved through amendment procedures in the statute. If a plaintiff fails to use amendment as a remedy, the sole recovery for the insufficiency determination is through Oregon's Administrative Procedures Act in an appeal to the Oregon Court of Appeals. ORS 343.165, ORS 183.480-.482.

Plaintiffs first note that the ALJ's Determination on Sufficiency of Due Process Complaint states that any party dissatisfied with the order may commence a nonjury civil action in the United States District Court within 90 days. I agree with defendants, however, that the court's jurisdiction cannot be based on a statement in the Determination alone but must come from authority granted by statute. See Lanza v. Ashcroft, 389 F.3d 917, 930 (9th Cir. 2004) (federal courts have limited jurisdiction and only possess power authorized by the Constitution and Congress).

Plaintiffs next argue that defendants' analysis is in error because it looks at the provisions of the IDEA in a piecemeal fashion, rather than the entire statutory structure as a whole. Plaintiffs contend that the IDEA guarantees procedural safeguards which undercut defendants' argument that plaintiffs have no redress in federal court for the dismissal of a due process complaint without any due process.

Page 11 - OPINION AND ORDER

I acknowledge that the Court has noted the "collaborative framework and expansive system of review established" by the IDEA.  Winkelman v. Parma City Sch. Dist., 550 U.S. 516, 531, 127 S. Ct. 1994 (2007).  This court's jurisdiction, however, must be clearly set forth in the statute.  Id. (when analyzing whether parents may prosecute independent claims under the IDEA, the Court noted, "This argument is contradicted by the statutory provisions we have recited.  True, there are provisions in IDEA stating parents are entitled to certain procedural protections and reimbursements; but the statute prevents us from placing too much weight on the implications to be drawn when other entitlements are accorded in less clear language.").

Turning to the provisions of the IDEA, plaintiffs argue that the ALJ must grant permission to amend a due process complaint unless the time frame to do so is within five days of a due process hearing.  Plaintiffs further contend that the IDEA does not allow the hearing officer to dismiss a complaint for insufficiency; instead, it provides a remedy of a delay of the due process proceeding.

Under the IDEA, a party may present a complaint "with respect to any matter relating to the identification, evaluation, or educational placement of the child, or the provision of a free appropriate public education to such child."  20 U.S.C. § 1415(b)(6)(A).  The due process complaint notice "shall include" the name and address of the child, or contact information of a homeless child, and the name of the school the child is attending.  Id. § 1415(b)(7)(A)(ii)(I).  The IDEA precludes a party from having "a due process hearing until the party, or the attorney representing the party, files a notice that meets the requirements of subparagraph (A)(ii)."  Id. § 1415(b)(7)(B).

(D)  Determination

Within 5 days of receipt of the notification provided under subparagraph (C), the hearing officer shall make a determination on the face of the notice of whether the notification meets the requirements of subsection (b)(7)(A), and shall immediately notify the parties in writing of such determination.

(E)  Amended complaint notice

(i)  In general.  A party may amend its due process complaint notice only if–

(I)  the other party consents in writing to such amendment and is given the opportunity to resolve the complaint through a meeting held pursuant to subsection (f)(1)(B); or

(II)  the hearing officer grants permission, except that the hearing officer may only grant such permission at any time not later than 5 days before a due process hearing occurs.

(ii)  Applicable timeline.  The applicable timeline for a due process hearing under this subchapter shall recommence at the time the party files an amended notice, including the timeline under subsection (f)(1)(B).

Id. § 1415(c)(2)(D)-(E).

Although the IDEA does provide for amending due process complaint notices, the court's

jurisdiction is a separate matter.  This court's jurisdiction is specified in § 1415(i)(2)(A):

Any party aggrieved by the findings and decision made under subsection (f) [impartial due process hearing] or (k) [placement in alternative educational setting] who does not have the right to an appeal under subjection (g) [appeal to the State educational agency when due process hearing is conducted by a local educational agency], and any party aggrieved by the findings and decision made under this subsection, shall have the right to bring a civil action with respect to the complaint presented pursuant to this section, which action may be brought in any State court of competent jurisdiction or in a district court of the United States, without regard to the amount in controversy.

This last section provides an appeal to district court of the findings and decision resulting

from a due process hearing.  If the hearing officer deems a complaint insufficient, no due process

hearing takes place.  If there is no due process hearing, there are no findings and decision resulting

from the hearing.  As a consequence, there is no judicial review because judicial review is limited

to findings and decisions resulting from due process hearings.  The court in Knight v. Washington

Sch. Dist., No. 4:09CV00566 ERW, 2010 WL 1909581, at *3-4 (E.D. Mo. May 10, 2010), came

to the same conclusion that it lacked jurisdiction under § 1415(i)(2)(A) to review the dismissal of

a due process complaint for insufficiency.  Knight quoted part of the legislative history:

> A due process complaint notice filed under section 615(b)(7)(A) is deemed
> to be sufficient for purposes of going to a due process hearing.  However, if the
> party receiving the notice believes it to be insufficient, section 615(c)(2) requires
> the receiving party to notify the hearing officer and the other party within 20 days
> of receiving the notice.  A hearing officer then has five days from receipt of the
> notice of insufficiency to determine whether the due process complaint notice
> meets the statutory requirements.  *This determination shall be made on the face of*
> *the complaint.  There should be no hearing or appeal in regard to the hearing*
> *officer's determination.*

Id. at *4 (quoting S. Rep. No. 108-185, at 35 (2003) (emphasis added)).

Plaintiff cites Va. Office of Protection and Advocacy v. Va. Dep't of Educ., 262 F. Supp.

2d 648, 657 (E.D. Va. 2003), for its holding that § 1415(i)(3)(A)–"district courts of the United

States shall have jurisdiction of actions brought under this section without regard to the amount in

controversy"–provides the court with subject matter jurisdiction over a challenge to an IDEA

complaint resolution procedure.  The court went on to hold that even though it had jurisdiction,

there was no private right of action under which plaintiffs could proceed.  Id. at 658-59.

For these reasons, I conclude that the court does not have jurisdiction to review the

dismissal of the due process complaint for insufficiency.  Accordingly, I dismiss the Second

Page 14 - OPINION AND ORDER

Claim seeking a declaration that plaintiffs exhausted their administrative remedies concerning

ALJ House's December 4, 2009 dismissal of the Amended Due Process Hearing Complaint.

## CONCLUSION

Defendants The Dallas School District No. 2, Christy Perry, Susan Gartland, Michael

Beck, and Brian Green's Partial Motion to Dismiss (#23) is granted as explained above.

IT IS SO ORDERED.

Dated this _____15th_____ day of December, 2010.


        ___/s/ Garr M. King_____
        Garr M. King
        United States District Judge